Filed 8/12/16  P. v. Howard CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>         v.<br><br>ROBERT LEE HOWARD,<br><br>    Defendant and Appellant. | F070872<br><br>(Super. Ct. No. CRM034115)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Marc A. Garcia, Judge.

Jonathan E. Berger, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Poochigian, Acting P.J., Detjen, J., and Smith, J.

## *INTRODUCTION*

Appellant Robert Lee Howard was convicted by a jury of three counts of aggravated sexual assault, in violation of Penal Code[1] section 269, and seven counts of lewd and lascivious acts on a child under the age of 14 years, in violation of section 288, subdivision (a). Multiple-victim enhancements, pursuant to section 667.61, subdivisions (b) through (e), also were found true as to each of the seven section 288, subdivision (a), convictions. Howard timely appealed and appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436. We affirm.

## *FACTS AND PROCEDURAL HISTORY*

S.L.B. is Howard's stepdaughter and was 44 years old at the time of trial. S.L.B.'s mother married Howard when S.L.B. was around three years old. S.L.B. testified at trial pursuant to Evidence Code section 1101, subdivision (b), and section 1108. S.L.B. testified to multiple acts committed by Howard against her when she was a child.

When S.L.B. was about three, Howard showed her a picture of a man touching a young girl's thigh; he then tried to touch her in the same manner. When she was in the first grade, Howard attempted to penetrate her with his penis. On another occasion, Howard forced her to copulate him orally. When S.L.B. was six or seven years old, Howard "made" her "have sex with him" in his truck on the side of the road. Howard threatened her with physical harm if she told anyone.

When she was nine, S.L.B. told a neighbor she was "being touched by somebody," but did not identify the person. An investigation ensued and S.L.B. was placed in foster care; after two weeks she returned home. Howard was not living in the home, but he returned less than a year afterward. About a year after Howard moved back in, S.L.B's mother went to work outside the home and the molestations resumed about a year later, when S.L.B. was 12.

---

[1]References to code sections are to the Penal Code unless otherwise specified.

S.L.B. described five incidents that took place when she was 12 to 14 years old. She acquiesced because she was afraid of Howard. She told her mother and her mother and Howard argued, but the incidents continued. Howard molested S.L.B. twice when she was 15 or 16.

When S.L.B. was 17, she believed Howard had sexually touched a young neighbor. She told Howard, "I am done," and had her boyfriend come and pick her up from home. When she and her boyfriend returned for her possessions, Howard and the boyfriend argued; Howard went into his bedroom and returned with a gun. He fired the gun as the boyfriend ran away. S.L.B. had no further contact with Howard for a long time after that.

J.C. is one of S.L.B's daughters and was around 23 years old at the time of trial. J.C. testified pursuant to Evidence Code section 1108 that, when she was very young, Howard threatened he would get rid of a pony J.C. enjoyed riding unless she performed "oral sex on him." She refused and the next time she was at Howard's house, the pony was gone. A photograph of J.C., the pony, and Howard was introduced into evidence as People's exhibit No. 106.

J.C. is the victim of the offenses in counts 1 through 9. When J.C. was four or five, she was riding on a tractor with Howard and he placed his hand underneath her clothing and "rubbed … with his fingers in between [her] legs." This same behavior occurred on several other occasions when J.C. was on the tractor. J.C. also described "maybe five" incidents when she was in a car with Howard and he would place his hand inside her pants and rub her vagina. When she was about six or seven, Howard placed his penis inside her mouth and held her head.

On another occasion, J.C. was playing in a camper on Howard's property. Howard "stuck his hands" in her pants and "tried to stick his finger inside." Another time, Howard pulled J.C. into his bedroom and told her to remove her clothes. Howard

rubbed his penis with lotion and "tried to insert himself" inside her; she cried loudly and Howard stopped. Howard told her not to tell anyone what had happened.

J.C. described several incidents in which Howard made her put his penis in her mouth. She testified it was "more than two" times, but could not recall if it was "more than three" or "at least three" times.

When J.C. was 12 or 13, she learned her mother had been molested by Howard. About two years later, J.C. told S.L.B. that Howard had molested her, too. S.L.B. was "stunned" and told her husband, but took no action.

Howard attended J.C.'s wedding. Prior to the wedding, J.C. told her future husband about the molestations. At the wedding, Howard apologized to J.C.'s husband for "what happened."

S.B. is the victim of the count 10 offense and was about 14 years old at the time of trial. S.B. is also a daughter of S.L.B. When S.B. was five or six years old, she was visiting Howard's home and having dinner. She fell ill and Howard put her in his lap. He put his hand under her clothing and digitally penetrated her. S.B. did not disclose this incident to anyone until April 2014, when she told a friend. The friend encouraged S.B. to tell S.L.B., which S.B. eventually did.

S.L.B. reported to the authorities that Howard had molested S.B. On June 17, 2014, J.C. contacted the authorities and described multiple incidents where Howard had molested her.

On June 20, 2014, with the participation of a deputy sheriff, J.C. made two pretext phone calls to Howard. During the course of one of the calls, Howard apologized to J.C., although he didn't specify what he was apologizing for specifically. Howard denied having touched S.B.'s "privates."

A first-amended information filed September 23, 2014, charged Howard with three counts of aggravated sexual assault against J.C. and six counts of lewd and lascivious acts against J.C. One count charged a lewd and lascivious act against S.B. As

4.

to each lewd and lascivious count, a section 667.61, subdivisions (b) through (e), enhancement was alleged.

Jury trial commenced on September 23, 2014. On September 25, Howard requested a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. Howard complained that the pony picture should not have been admitted and that defense counsel had not yet obtained Howard's medical records that he had asked defense counsel to get after learning the pony picture would be admitted. The trial court stated that defense counsel had argued against admission of the pony picture, but the trial court ruled just a few days before the start of trial that it was admissible.

Howard indicated he was not really unhappy with his lawyer; he wanted to replace the trial judge.

Defense counsel indicated there hadn't been sufficient time to obtain the medical records, which were over 20 years old. Howard indicated the records would show that he had a stroke 20 years ago and was impotent afterward. The defense had been attempting to find medical records to substantiate Howard's claim, but the medical records obtained by the defense to date, which dated back four years, did not indicate that Howard had ever had a stroke. The trial court noted, "Just to be clear, [the records] may not exist."

The trial court noted that Howard had not waived time and in fact "made it abundantly clear that he wanted to go to trial as quickly as possible." Howard reiterated, "Legally I don't have to waive time."

The trial court declined to grant a continuance of the trial or the *Marsden* motion on the basis the defense had not obtained medical records documenting a stroke Howard claimed he had had 20 years ago.

The defense called no witnesses at trial.

On September 26, 2014, the jury found Howard guilty of all 10 counts and found all enhancements true. The trial court pronounced sentence on December 19, 2014. Terms of 15 years to life were imposed on counts 1, 3, and 5, the aggravated assault

5.

counts, pursuant to section 269, subdivision (a); count 1 was set as the principal term and counts 3 and 5 were consecutive terms; and consecutive terms of 15 years to life were imposed for counts 7 through 10, four of the lewd and lascivious acts offenses, pursuant to section 667.61, subdivisions (b) and (e)(4). The trial court stayed imposition of punishment on counts 2, 4, and 6 pursuant to section 654. Various fines and fees and registration requirements were imposed.

The abstract of judgment filed December 23, 2014, accurately reflects the trial court's sentence. Howard filed a timely notice of appeal on January 7, 2015.

Appellate counsel was appointed April 1, 2015. On April 23, 2015, appellate counsel filed a motion to augment the record by including six photographs that were admitted into evidence at trial. On April 28, this court granted the request to augment the record.

On July 13, 2015, this court granted appellate counsel's request for preauthorization for travel expenses to meet personally with Howard. Appellate counsel did travel and meet with Howard, and this court authorized payment of travel expenses on October 19, 2015.

## *DISCUSSION*

On September 2, 2015, appellate counsel filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436. That same day, this court issued its letter inviting Howard to submit supplemental briefing. No supplemental brief was filed.

On page 19 of the *Wende* brief, appellate counsel notes that Howard challenges the trial court's denial of a continuance after allowing admission of exhibit No. 106, the picture of J.C. on the pony, in order to allow the defense to engage an expert to testify on the reliability of memory of a child of the age depicted in the exhibit. Howard also challenges defense counsel's ineffectiveness for failure to obtain "medical records which would have established the age of the child" depicted in exhibit No. 106.

6.

At the September 25, 2014, hearing where Howard sought a continuance, the stated reason was to obtain his medical records, which he alleged would establish that he had had a stroke 20 years' prior and was impotent. Moreover, at that same hearing, Howard reaffirmed that he would not waive time and wanted the trial to proceed as expeditiously as possible.

A trial court has broad discretion to determine whether good cause exists to grant a continuance of a trial. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) A defendant must do more than *surmise* that defense experts might have provided favorable testimony. (*People v. Lucas* (1995) 12 Cal.4th 415, 448, fn. 5.) Here, Howard has done no more than surmise that an expert might have been located who possibly would provide favorable testimony.

As for Howard's claim of ineffective assistance of counsel based upon defense counsel's inability to obtain the medical records that Howard sought, a reviewing court presumes that counsel's actions fell within a wide range of professional competence and that counsel's actions or inactions can be explained as a matter of trial tactics. (*People v. Carter* (2003) 30 Cal.4th 1166, 1209.) Decisions as to what witnesses to call and evidence to present is ordinarily a matter of trial tactics and not grounds for reversal. (*People v. Weaver* (2001) 26 Cal.4th 876, 926; *People v. Bolin* (1998) 18 Cal.4th 297, 334.)

Howard gave defense counsel "conflicting information" about where the records could be obtained. When defense counsel was able to contact the correct medical provider, the medical provider stated it did not maintain "records over 20 years old." Despite this information, defense counsel was diligently seeking other avenues in which to obtain Howard's medical records from 20 years prior. As the trial court noted, there was nothing in the medical records obtained indicating that Howard had ever suffered a stroke.

With respect to the statement in the appellate brief that medical records establishing the age of the victim in exhibit No. 106 should have been obtained, medical records certainly would not be necessary to establish this fact, if it was relevant.

After an independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## ***DISPOSITION***

The judgment is affirmed.